UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:

JOE'S FRIENDLY SERVICE & SON, INC.
d/b/a THATCHED COTTAGE AT THE
BAY,

                      Debtor,

----------------------------------------------------------------x

In re:

THATCHED COTTAGE, LP,

                      Debtor,

----------------------------------------------------------------x

YAMA RAJ,

                      Appellant,

    -against-

R. KENNETH BARNARD, ESQ., Chapter
11 Operating Trustee, and BETHPAGE
FEDERAL CREDIT UNION,

                      Apellees.

----------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**

Chapter 11
Case No.: 14-70001(REG)

Chapter 11
Case No.: 14-70002(REG)

15-cv-00376 (ADS)

**APPEARANCES:**

**BERGER, FISCHOFF & SCHUMER, LLP**
*Attorneys for the Appellant*
40 Crossways Park Drive
Woodbury, NY 11797
        By: Gary S. Fischoff, Esq.
             Laurie Sayevich Horz, Esq., Of Counsel

**LAMONICA HERBST & MANISCALCO, LLP**
*Attorneys for the Appellee R. Kenneth Barnard as Chapter 11 Trustee of the Estates of Joe's Friendly Service & Son d/b/a Thatched Cottage at the Bay and Thatched Cottage LP*
3305 Jerusalem Avenue
Wantagh, NY 11793
    By: Gary F. Herbst, Esq., Of Counsel

**CERTILMAN BALIN ADLER & HYMAN, LLP**
*Attorneys for Appellee Bethpage Federal Credit Union*
90 Merrick Avenue
East Meadow, NY 11554
    By: Richard J. McCord, Esq.
        Carol A. Glick, Esq., Of Counsel

**SPATT, District Judge:**

On January 23, 2015, the Appellant Yama Raj ("Raj" or "the Appellant") commenced the present appeal from an order of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), contending that the Bankruptcy Court's refusal to vacate its own prior order, which *inter alia* confirmed the Appellant's purchase of certain real property in a bankruptcy sale, was an abuse of discretion. For the reasons set forth below, the Court finds that the Bankruptcy Court did not abuse its discretion and thus affirms the determination.

## I.    Background

On January 2, 2014, Joe's Friendly Service & Son, Inc. d/b/a Thatched Cottage by the Bay ("Joe's Friendly") filed a Voluntary Petition for reorganization under Chapter 11 of the Bankruptcy Code ("Chapter 11"). Joe's Friendly owned and operated a catering hall (the "Facility") that was located on certain parcels of real property in Centerport, New York.

At about the same time, Thatched Cottage, LP ("Cottage LP") also filed for reorganization under Chapter 11. Cottage LP owned the real property on which the Facility is located. The Facility and the real property upon which it sits will be collectively referred to as the "Premises."

On January 10, 2014, the Bankruptcy Court granted a motion by Joe's Friendly, pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 1015(b), to jointly administer the petition of Joe's Friendly with the related Chapter 11 petition of Cottage LP. These jointly administered petitions are collectively referred to as the "Petitions."

It is undisputed that the Appellee Bethpage Federal Credit Union ("BFCU") is the holder of first priority liens and security interests in all of the assets of Joe's Friendly's and Cottage LP, including the Premises. Thus, BFCU has a pecuniary interest in the outcome of this appeal.

On July 4, 2014, the Appellee R. Kenneth Barnard ("Barnard") was appointed by the Office of the United States Trustee to serve as the Chapter 11 Operating Trustee for both Petitions. Upon being appointed, Barnard immediately took control of operations at the Facility. Eventually, on or about July 24, 2014, he sought to sell the Premises and the debtors' remaining assets in furtherance of satisfying the debtors' outstanding obligations. At the time, the Facility was still a going concern.

On August 11, 2014, the Bankruptcy Court issued an order approving the proposed terms and conditions for a public sale of the Premises (the "Sale Order").

The Sale Order also approved of the retention of David R. Maltz & Co., Inc. ("Maltz") to act as the sale broker and auctioneer. In advance of the public sale, Maltz embarked on a campaign to market the Premises to prospective buyers. In this regard, Maltz created and distributed signs that advertised the Premises as a "21,000 Sq Ft Waterfront Catering Facility." The Appellant contends that Maltz's advertising brochure depicted the area for sale as including "a catering facility, buildings and property including the waterfront and bulkhead located on Mill Pond." Appellant's Br. at 2.

The Appellant contends that, in advance of the public auction of the Premises, he attempted to review certain unspecified files relating to the property, which are allegedly maintained by the Town of Huntington Building Department. However, the Town advised him that it did not have "paper files . . . that were available for review." The Appellant does not elaborate further on this point.

On September 24, 2014, a public sale of the Premises was held.

According to Barnard, copies of the court-approved terms and conditions of the sale (the "Terms of Sale") were provided to each bidder at the auction, who agreed to be bound by them. In fact, each registered bidder, including the Appellant, was required to read and execute the Terms of Sale in order to participate in the auction.

Relevant here, the Terms of Sale identified the Premises by section, block, and lot, as those parcels appear on the Suffolk County Land and Tax Map, and included the following provisions:

Maltz and the Trustee and the Trustee's professionals have not made and do not make any representations or warranties as to the physical condition, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Real Properties [the Premises] or this Sale, which might be pertinent to the purchase of the Real Properties . . .

\*     \*     \*

The Real Properties [the Premises] are being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**," without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any liens, claims, or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and the sale of the Real Properties are subject to, among things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions. By delivering their respective Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Real Properties, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Properties in making their bids. Neither Maltz, the Trustee nor any of their collective representatives makes any representations or warrantees with respect to the permissible uses of the Real Properties including, but not limited to, the zoning of the Real Properties. All Bidders acknowledge that they have conducted their own due diligence in connection with the Real Properties and are not relying on any information provided by Maltz, the Trustee, or their professionals. The Real Properties will be sold subject to any and all violations or conditions requiring corrective action.

(emphasis in original).

The Appellant does not dispute that he was provided with these Terms of Sale; that he agreed to be bound by them; and that he read and executed them prior to participating in the auction. Indeed, a copy of the Terms of Sale signed by the Appellant is in the record.

Despite the clear language of the Terms of Sale, the Appellant contends here that his decision to participate in the auction was based largely on his understanding that the Premises was "waterfront," as had been advertised by Maltz.

Ultimately, the Appellant entered the highest bid for the Premises. As reflected in a Memorandum of Sale following the auction, the Appellant's bid was for $4,650,000, plus a 4% buyer's premium of $186,000, for a total sale price of $4,836,000. According to the Memorandum of Sale, which is a part of the court record, the Appellant paid a non-refundable deposit in the amount of $350,000.

In addition, pursuant to the Terms of Sale, within 48 hours of the auction, the Appellant was required to deliver a bank check in an amount of at least 10% of the bid price, less the initial deposit in the amount of $350,000, plus the 4% buyer's premium. It is undisputed that he complied, and deposited a total amount of $651,000.

On October 16, 2014, following a hearing before the Honorable Robert E. Grossman, the Bankruptcy Court issued an order confirming the sale of the Premises in accordance with the Terms of Sale (the "Confirmation Order").

With respect to a closing, the Terms of Sale provided, in relevant part, as follows:

The Successful Bidder(s) must close title to the [Premises] not later than thirty (30) days from the date of the entry of the Sale Confirmation Order . . .

\*     \*     \*

The failure to Close for any reason whatsoever (except the Trustee's inability to deliver the insurable title to the [Premises]) including, the failure to pay the balance of the Purchase Price(s) on the date of the Closing(s) will result in the Trustee retaining the Deposit(s), the termination of the Successful Bidders' right to acquire the [Premises]. The Successful Bidder(s) will have no recourse to any other property or assets of the Trustee and the Debtors' estates, which will be exempt from levy, execution or other enforcement procedure for the satisfaction of Successful Bidders' remedies. The provisions of this section will survive the Bidding Procedures or the Closing(s).

The closing was originally scheduled for November 15, 2014 but, on consent of the parties, was adjourned to November 24, 2014.

The Appellant contends that, in late November 2014, he discovered that the Premises were not "waterfront" as Maltz's advertisements had allegedly led him to believe. In this regard, he states as follows:

[T]here existed a parcel, measuring four feet deep and running along the Properties' [Premises] border with Mill Pond belonging to the Town of Huntington, rendering the Property "waterview," and not "waterfront" as represented by [Barnard] and [his] agent, Maltz. Indeed, this four foot wide parcel runs almost the entire west-east length of the Property from the waterline thereby preventing the purchaser [the Appellant] from utilizing the same, building a bulkhead or other structures that could be used in connection with the operation of a waterfront catering facility.

Based on this discovery, the Appellant concluded that Barnard and Maltz had "offered property for sale in the auction that was neither owned by the Debtor [Cottage LP] nor property that [Barnard] had any legal right to offer for sale, let alone convey to the successful bidder." Apparently, in late November, 2014, the

Appellant notified Barnard that he would not close on the Premises and demanded a refund of his deposit on this basis.

Separately, on November 20, 2014, the Town of Huntington Department of Public Safety declared the Premises "unsafe and unfit for human habitation pursuant to the Code of the Town of Huntington." Apparently, this designation was supported by the report of an August 15, 2014 structural inspection of the Premises performed by Galli Engineering, P.C. (the "Galli Report"), which was conducted to ascertain damage sustained by the Premises during Superstorm Sandy. The Galli Report, which is a part of the record, found that Superstorm Sandy had caused the Facility to experience settling, which is consistent with extreme flooding events. In particular, it appeared to inspectors that, as a result of the settling, one of the Facility's walls was leaning in a northerly direction, thereby causing stress throughout the structure. Ultimately, the Galli Report found that the Facility "will need some type of remediation to relieve the increased stresses throughout the structure." In order to bring the Premises into compliance with the Town Code, the Galli Report recommended "[t]emporary shoring along with underpinning [of the settling foundation] . . . to ensure safety of the building."

The Appellant contends, without pointing to evidence in the record, that the Debtors, namely Joe's Friendly and Cottage LP, somehow orchestrated the Town's determination that the Premises were not in compliance with the Building Code.

Nevertheless, on December 2, 2014, the closing having not yet occurred, Barnard notified the Appellant that the closing would be rescheduled for December

16, 2014. In addition, Barnard cautioned the Appellant that if he failed to appear and tender the balance of the purchase price for the Premises, the Appellant would be deemed in default under the Terms of Sale and Barnard would retain all funds paid by the Appellant.

The closing did not take place as scheduled.

Instead, on December 12, 2014, the Appellant made a motion (the "Motion to Vacate") in the Bankruptcy Court pursuant to Fed. R. Bankr. P. 7024 and Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 60(b)(1), (3), and (6), seeking to: (i) vacate the October 16, 2014 Confirmation Order; (ii) rescind the contract of sale as incorporated in the Terms of Sale due to "mutual mistake"; and (iii) refund the Appellant's deposit due to Barnard's inability to convey the Premises in accordance with the Terms of Sale.

On January 6, 2015, following oral argument, the Bankruptcy Court issued an order (the "Underlying Order"), which denied the Appellant's Motion to Vacate in its entirety and authorized the Trustee to retain the Appellant's deposit.

On January 22, 2015, the Appellant filed a notice of appeal of the Underlying Order to this Court, asserting the following grounds for reversal: (i) the characterization of the Premises as "waterfront" constitutes a material misrepresentation by Barnard which operates to invalidate the sale under Fed. R. Civ. P. 60(b)(1) and (3); and (ii) the condemnation of the Premises following the sale should, as a matter of equity, invalidate the sale under the "catch-all"

provision of Fed. R. Civ. P. 60(b)(6). As discussed more fully in this opinion, in the Court's view, these contentions are without merit.

## II. Discussion

### A. The Applicable Legal Standards

The district court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60, 65-66 (E.D.N.Y. 2012) (Spatt, J.) (citing In re MarketXT Holdings Corp., 346 F. App'x 744, 745 (2d Cir. 2009)). In the context of an appeal from a motion to vacate under Fed. R. Civ. P. 60(b), the district court reviews the determination of the Bankruptcy Court for abuse of discretion. In re Summit Ventures, 161 B.R. 9, 11 (D. Vt. 1993). In this regard, "[n]ormally, only the decision refusing Fed. R. Civ. P. 60(b) relief is at issue in such review, In re Alan Gable Oil Development Company, 978 F.2d 1254 (4th Cir. 1992), but if a reviewing court does consider the underlying determinations, factual findings are binding unless clearly erroneous, while conclusions of law are reviewed *do novo*. In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d Cir. 1990), cert. denied, Air Line Pilots Ass'n Intern., AFL-CIO v. Shugrue, 116 L. Ed. 2d 28, 112 S. Ct. 50 (1991)." Id.; see also Clear Blue Water, LLC, 476 B.R. at 66.

Rule 60(b) provides various grounds for the court to relieve a party from a final judgment or order, including the following, which have been asserted by the Appellant in this case:

(1) mistake, inadvertence, surprise, or excusable neglect; . . .
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . .
(6) any other reason that justifies relief.

Relief under this section is " 'invoked only upon a showing of exceptional circumstances.' " <u>Rijo v. JPMorgan Chase Bank, N.A.</u>, 12-cv-2922, 2013 U.S. Dist. LEXIS 19890, at *14 (E.D.N.Y. Jan. 15, 2013) (Spatt, J.) (quoting <u>Nemaizer v. Baker</u>, 793 F.2d 58, 61 (2d Cir. 1986)). " 'The burden of proof is on the party seeking relief from [the] judgment [.]' " <u>In re Malese 18 Corp.</u> 09-cv-2412, 2913 U.S. Dist. LEXIS 105684, at *12 (E.D.N.Y. July 26, 2013) (Spatt, J.) (quoting <u>United States v. Int'l Bhd. of Teamsters</u>, 247 F.3d 370, 391 (2d Cir. 2001)).

As to the first asserted subsection, " '[t]he purpose of Rule 60(b)(1) is to afford relief to a party from a material mistake that would have changed the outcome of the court's judgment.' " <u>In re Shen</u>, 501 B.R. 216, 221 (S.D.N.Y. 2013) (quoting <u>In re CIS Corp.</u>, 89-10073 through 89-10084, 2007 U.S. Bankr. LEXIS 1938, at *12 (S.D.N.Y. May 31, 2007) ("Deliberate and willful conduct on the part of the party seeking relief pursuant to Rule 60(b)(1) precludes a finding of mistake and inadvertence")). In this regard, " 'relief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment.' " <u>In re Waters</u>, 99-31833, 2011 Bankr. LEXIS 3245, at *65 (D. Conn. Aug. 23, 2011) (quoting 11 C.A. Wright, A. R. Miller & M.K. Kane, <i>Federal Practice and Procedure</i> § 2858, at 367-77 (2 ed. 1995)). Rather, the moving party must demonstrate that his alleged mistake was justified, and not merely the result of carelessness. <u>See</u> <u>id.</u>; <u>see also</u> <u>Progressive Cas. Ins. Co. v. Liberty Mut. Ins. Co.</u>, 91-cv-2477, 1996 U.S. Dist. LEXIS 13437, at

*6-*7 (S.D.N.Y. Sept. 13, 1996) (holding that "relief may be denied where the mistake was due to ignorance or carelessness on the part of an attorney or a litigant").

With respect to subsection (3), which authorizes vacatur in instances of fraud and misrepresentation, relief cannot be granted absent clear and convincing evidence of material misrepresentations. <u>See</u> <u>In re Shen</u>, 501 B.R. at 222. In this regard, " '[t]o prevail on a Rule 60(b)(3) motion, a movant must show that the conduct complained of prevented the moving party from fully and fairly presenting his case' " to the Bankruptcy Court. <u>Id.</u> (quoting <u>State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada</u>, 374 F.3d 158, 176 (2d Cir. 2004)). "Mere allegations of legal error, without more, cannot form the basis of Rule 60(b)(3) relief." <u>Id.</u>

Finally, the "catch-all provision" found in Rule 60(b)(6) "allows relief for 'any other reason justifying relief from the operation of the judgment.' " <u>In re Carlton Concrete Corp.</u>, 08-cv-242, 2008 U.S. Dist. LEXIS 74430, at *33 (E.D.N.Y. Sept. 26, 2008) (quoting Fed. R. Civ. P. 60(b)(6)). This subsection is "reserved for only the most limited of circumstances" and "is properly invoked only when there are extraordinary circumstances justifying relief, . . . when the judgment may work an extreme and undue hardship, . . . and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule." <u>Id.</u> (quoting <u>Nemaizer</u>, 793 F.2d at 63).

The Court notes that these legal principles must necessarily be considered with a view toward the longstanding public policy in favor of upholding the finality

of sale orders issued by Bankruptcy Courts, which is currently embodied in Bankruptcy Code § 363(m).  See, e.g., United States v. Salerno, 932 F.2d 117, 123 (2d Cir. 1991) (relying upon Section 363(m) to decline to disturb a bankruptcy sale in furtherance of "the policy of finality" of such sales); 410 Park Ave. Assoc., L.P. v. American Banknote Corp., 99-11577, 2000 U.S. Dist. LEXIS 8796, at *7 (S.D.N.Y. June 22, 2000) (noting the "broad policy underlying Section 363(m) to afford finality to the judgments of the Bankruptcy Court").

**B.    As to Whether the Bankruptcy Court Abused its Discretion by Declining to Vacate the Confirmation Order Under Fed. R. Civ. P. 60(b)(1) and (3)**

The Appellant contends that the Bankruptcy Court abused its discretion by declining to vacate the Confirmation Order in light of the fact that the advertising brochures for the Premises referred to the property as "waterfront," when, actually, the Premises are separated from Mill Pond by a four-foot strip of land owned by the Town of Huntington.  Though not totally clear from the Appellant's Brief, it appears that he contends that this alleged mischaracterization constitutes both a "mistake" under Rule 60(b)(1) and a "misrepresentation" under Rule 60(b)(3).  The Court disagrees as to both of these contentions.

The Appellant's deliberate and willful conduct leading up to his eventual purchase of the Premises precludes him from now seeking to avoid the sale. Initially, it is clear that, before participating in the public auction, the Appellant recognized the need to perform due diligence with regard to the purchase of the Premises.  In this regard, apparently, he identified certain documents in the

custody of the Town of Huntington that he deemed important to whether or not he should bid on the Premises. He claims that he was deprived of access to such documents by the Town, but fails to identify any other efforts he made to obtain them after simply being turned away. He similarly fails to identify the additional due diligence, if any, that he performed before actually participating in the auction.

It therefore appears that the Appellant failed in his singular effort to view some unspecified documents in the Town's custody, and thereafter relied solely on an advertising brochure created by Maltz.

However, even if the Appellant performed nominal due diligence before attending the auction – which, of course, was his prerogative – his conduct *at* the auction supports a finding against him.

Indeed, the evidence establishes that the Appellant knowingly received, reviewed, and signed the court-approved Terms of Sale, thereby contractually obligating himself to comply with the Terms, for the specific purpose of becoming eligible to participate in the auction. Those Terms of Sale are thus dispositive here.

Of particular importance, the Terms of Sale identified the Premises by section, block, and lot, as those parcels appear on the Suffolk County Land and Tax Map. There is no evidence that, prior to bidding, the Appellant confirmed to his satisfaction that the Premises were, in fact, "waterfront" by examining the Suffolk County Tax Map. His failure to do so cannot reasonably be construed as a "mistake" or another person's unfair misrepresentation. Rather, in the Court's view, the Plaintiff's failing in this regard is sufficient to uphold the Bankruptcy

Court's finding that the Appellant was not mistaken or misled as to the precise metes and bounds of the Premises.

In addition, the Appellant's express written agreement to be bound by certain provisions before bidding on the Premises, including but not limited to the following statements, precludes any claim of mistake or misrepresentation based upon his prior review of advertising materials:

> Maltz and the Trustee and the Trustee's professionals have not made and do not make any representations or warranties as to the physical condition [of the Premises] . . . or any other matter or thing affecting or related to the [the Premises] or this Sale, which might be pertinent to the purchase of the Real Properties . . .

*    *    *

> [The Premises] are being sold "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**," without any representations, covenants, guarantees or warranties of any kind or nature . . . and the sale of the Real Properties are subject to, among things (a) any state of facts that an accurate survey may show; . . . [and] any state of facts a physical inspection may show;

*    *    *

> By delivering their respective Deposits, all Bidders acknowledge that they have had the opportunity to review and inspect the Real Properties, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Real Properties in making their bids.

*    *    *

> All Bidders acknowledge that they have conducted their own due diligence in connection with the Real Properties and are not relying on any information provided by Maltz, the Trustee, or their professionals.

As noted above, the Court reiterates that the subject Premises were sold "**AS IS**" and "**WITH ALL FAULTS**."

By these provisions, the Appellant knowingly adopted positions that are materially inconsistent with his contentions on this appeal. In particular, the Appellant agreed that he was not relying upon any information or representations provided by Maltz or Barnard in deciding to participate in the auction. However, the entire basis of his instant appeal is that he relied to his detriment on information and representations provided by Maltz and Barnard.

The Appellant also agreed that an eventual sale of the Premises would be subject to any state of facts that an accurate survey may show. However, the Plaintiff does not assert that he examined an accurate survey. On the contrary, despite being provided with the section, block, and lot numbers for the Premises, he relied singularly on an illustration contained in an unofficial advertisement. In the Court's view, based on its review of the brochure in the record, it would be unreasonable to rely on the image contained in the brochure as an accurate representation of the property's boundary lines.

Finally, the Appellant agreed in the Terms of Sale that he had the opportunity to review and inspect the Premises; that he had performed due diligence; and that he was relying solely on his own independent investigations and inspections of the property in making his bid. Here, he contends otherwise, claiming that he relied not on his own review and inspection of the property, but on the advertising materials supplied by Maltz.

Nevertheless, the Appellant voluntarily participated in the auction and committed himself to making a $4.8 Million purchase. Also, within 48 hours, he proceeded to pay a non-refundable deposit of more than $650,000. Under these circumstances, the Appellant may not now rely on Rule 60(b) to invalidate the sale. Cf. Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C., 10-cv-261, 2011 U.S. Dist. LEXIS 67871, at *16-*17 (E.D.N.Y. June 23 2011) (finding that Rule 60(b)(1) cannot excuse deliberate choices in light of the duty to protect one's own interests by taking such legal steps as are necessary (internal quotation marks and citation omitted)), aff'd, 457 F. App'x 40 (2d Cir. 2012).

In the Court's view, the Bankruptcy Court was well within its discretion to so hold.

In this regard, the Court finds In re Oyster Bay Cove, 161 B.R. 338 (E.D.N.Y. 1993), to be instructive, despite the Appellant's attempts to distinguish it. In that case, the successful bidder in a bankruptcy sale purchased a 37-acre tract of real property, which contained a storm basin and a road relative to which the Incorporated Village of Oyster Bay Cove had an irrevocable offer of dedication. The Village neither exercised nor released its rights in this offer. As in this case, the parcel was sold "as is."

The purchaser in In re Oyster Bay Cove later sought to avoid the sale, contending inter alia that the Trustee had been unable to convey marketable title. In particular, the purchaser claimed that the property was encumbered by the offer of dedication that ran with the land. The court upheld the sale, noting that "the

'terms and conditions of sale' [had] explicitly provided, *inter alia*, that the property was being sold 'as is' and subject to any covenants, restrictions and easements of record." Relevant here, the court noted:

> Even were the Court to believe, which it does not, that the Trustee was at fault for some unintentional misrepresentation regarding the offer of dedication, in light of both the language of the "Terms and Conditions of Sale" specifying that the property was being offered "as is", and the maps prominently displayed just outside the courtroom on the day of the auction clearly showing a road running through the property, the Court finds it incredible that [the purchaser], before making a $2,600,000 bid, did nothing to confirm whether or not the sale was free and clear of the offer of dedication. "A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own carelessness." Slaughter's Administrator v. Gerson, 80 U.S. 379, 13 Wall. 379, 20 L. Ed. 627 (1872).

Id. at 343-44.

Similarly, in this case, the Terms of Sale were explicit and clear in their warning that the Premises were being sold "as is", and they should be enforced. Further, similar to the court in In re Oyster Bay Cove, this Court finds it difficult to believe that the Appellant, before making a bid exceeding four million dollars, did virtually nothing to confirm the true boundary lines of the Premises.

Also, the Court notes that it may be true that the Appellant was obstructed or otherwise prevented from viewing certain documentation regarding the Premises in advance of the auction. However, this is not a valid reason for canceling the otherwise valid sale. If the Appellant had, indeed, been so obstructed, the prudent thing would have been to avoid executing the Terms of Sale and, certainly, to refrain from competitively bidding on, and ultimately buying, the property.

Accordingly, the Bankruptcy Court's Underlying Order, to the extent it declined to vacate the prior Confirmation Order based on a mistake or misrepresentation under subsections (1) and (3) of Fed. R. Civ. P. 60(b), is affirmed.

## C. As to Whether the Bankruptcy Court Abused its Discretion by Declining to Vacate the Confirmation Order Under Fed. R. Civ. P. 60(b)(6)

The Appellant also contends that relief is warranted under the "catch-all provision" found in Rule 60(b)(6). Although the Court finds his reasoning somewhat unclear, apparently, the Appellant contends that the Debtors, Joe's Friendly and Cottage LP, commissioned the Galli Report, which resulted in the Town's determination that the Premises were not in compliance with the Town Code, for their own personal gain.

In this regard, the Appellant states that "the Debtor[s] or persons associated with [them] apparently procured the Galli [R]eport and provided it to the Town of Huntington, ostensibly to compel the Town to condemn the [Facility] for some gain to these actors." The Appellant further states, that "[i]t is clear that outside, nefarious influences were surreptitiously at play to gain condemnation of the building" and that he is "an innocent third party unwittingly caught in the middle of these machinations, [who] should not be penalized."

Based on these assertions, the Appellant contends that principles of equity, codified in Fed. R. Civ. P. 60(b)(6), entitle him to cancel the sale and have his deposit refunded. As to this contention, the Court finds that there is no evidence in the record supporting the Appellant's allegations. The Court finds no basis to

conclude that the debtors engaged in a scheme to induce the Town to find the Premises presently uninhabitable; that anyone stood to "gain" from the Town's determination; or that the Appellant is an innocent victim of others' nefarious machinations.

In fact, among the Terms of Sale that the Appellant executed and thus bound himself to, was the following: "The Real Properties will be sold subject to any and all violations or conditions requiring corrective action." Thus, the Appellant may not be heard to complain that the findings contained in the Galli Report warrant cancellation of his purchase. On the contrary, the Appellant expressly assumed the risk that the condition of the Premises may be in violation of certain local laws and/or regulations, and that certain corrective action may be required, at the expense of the purchaser, to bring the Premises into lawful compliance. In the Court's view, the Appellant's responsibility in this regard was clearly contemplated in the Terms of Sale and does not warrant the relief he seeks.

In sum, the Appellant has failed to demonstrate the kind of extraordinary circumstances that typically warrant invoking Rule 60(b)(6), which, as noted above, is reserved to correct only those judgments that may work an extreme and undue hardship.

The Bankruptcy Court did not abuse its discretion in so holding.

Accordingly, the Bankruptcy Court's Underlying Order, to the extent it declined to vacate the prior Confirmation Order based on principles of equity codified in the catchall-provision of Fed. R. Civ. P. 60(b), is affirmed.

### III.    Conclusion

Accordingly, based on the foregoing, the Court affirms the Bankruptcy Court's Underlying Order and denies the instant appeal.

The Clerk of the Court is directed to close this case.

Dated: Central Islip, New York
August 21, 2015

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge